Good morning, and may it please the court. My name is Stephen Montoya. I'm here this morning on behalf of my clients, the appellants Austin Flake and Logan Flake. This case arises from what the defendant, Maricopa County, originally described as a tragic accident. Two kids were in college in Utah. They come to Gilbert, Arizona, a suburb of Phoenix, to help Logan Flake's parents. They went to Florida. Counsel, we're familiar with the facts. It would help me, at least, if we got to one of the issues that could be dispositive, potentially. Yes. And that is that why shouldn't we conclude that the prosecutor independently decided to intensive investigation and thus breaking the causal chain to liability here? Your Honor, because this court's consistent opinions have said that the defense of prosecutorial independent judgment is eviscerated when there's evidence that a law enforcement officer has given them misrepresentations regarding... In those cases, primarily, there's kind of a hand-in-glove relationship. I've not seen a case in which there is this much independent reviewing of the evidence and independent exercise of judgment where we've still said that the prosecutor was acting at the behest of a rogue investigator. Well, Your Honor, the district court considered that argument, too. Well, it didn't reach the issue, but it was discussed, and so it's appropriate for us to consider it. Yes, Your Honor, it is. But I think the district court was right on that. That's really a question of fact. A prosecutor is always going to say, in order to the recommendations of a law enforcement officer, because prosecutors are supposed to exercise independent judgment. In this case, however, the prosecutor admitted on the record in supplemental excerpts of the record 92 and supplemental excerpts from the record 233 that she got this erroneous information from the detective, Detective Trombi, and that was the cause of the indictment of my clients. Well, it's the cause of the investigation that the prosecutor undertook, but that's different than saying it's the cause of the indictment. If someone comes in and says, something bad happened over here and X did it, if the prosecutor just says, okay, and rubber stamps that, that's one thing. If the prosecutor then undertakes their own investigation into X and the acts that are described, then it seems to me that that, you know, negates that it's really the fault of the investigator. Your Honor, it would if the finder of fact actually rendered that conclusion after looking at all of the evidence and examining the witnesses at trial, because is there anything more than that the prosecutor got the initial information from the investigator, which is always going to be true, whether the investigators good or bad, is there anything more that the investigator did to cause the prosecution? Well, the investigator gave the prosecutor a graph that notwithstanding the graph and notwithstanding the prosecutor's own, or the prosecutor's own alleged investigation, she made the same crazy mistake that the investigator made on page 463 of the record. There's no way that any reasonable person could conclude that the Salt River Project records demonstrated that the air conditioning was on and working all night. That's what the, that's what the investigator falsely told the prosecutor, and that's what the prosecutor falsely reiterated at trial. In fact, that claim, Your Honor, was so incredible that the district court judge, Judge Wake, when he heard investigator Trombi testify that, oh, the Salt River record showed that the AC was on and working all night, reversed summary judgment and said that that was so incredible that Trombi wasn't entitled to summary judgment. But, Your Honor, the prosecutor reiterated that same claim, which was equally incredible, in her deposition, which is part of the record, and actually on the pages that I just cited you, supplemental excerpts of record page 92. Question, isn't it true that Trombi told you that the SRP records showed that the air was working fine all night in the dog room? She told you what the SRP records showed, right? Answer, that the electricity and everything is working. Yes. That is something, Your Honor, because prosecutors don't want to be judged rubber stamps. A reasonable finder of fact could conclude that the prosecutor was just saying, oh, yeah, I researched everything myself. I'm not a rubber stamp. The naked denial of being a rubber stamp does not erase the fact that the prosecutor swallowed the misrepresentations of the investigator hook, line, and sinker. Counsel, I'm more interested in causation here. Yes, Your Honor. A separate prosecutor, or the prosecutor, who took this case, independently reviewed all of the records, reviewed all of the information in the file, including that which have applied to Ms. Trombi, and independently made a charging decision. Doesn't that cut off any concern about all of these other issues? No, Your Honor. Why not? Because this court's long line of precedence say that when an investigator makes misrepresentations to the prosecutor, that rebuts and creates a factual issue. Okay, but what is the, what evidence is there in the record to show that the prosecutor relied on those misstatements? Your Honor, I'll tell you. The evidence on the record, I just recited it. It's on page, supplemental excerpts of record, pages 92 and pages 233. All right, 92 and 233? Of the supplemental, Judge O'Scanlan, excerpts of record. Pages 92 and pages 233. And you cite those pages as evidence to show that he took the case, made the charging decision, based on that. Yes, Your Honor. If someone makes an incredible counterfactual claim, then that claim is repeated identically by the prosecutor. That's a strong piece of evidence that the prosecutor, in fact, served as the rubber stamp. And Your Honor says, the prosecutor says, oh, I exercised independent judges. But Your Honor, Your Honor, there's a long line of cases. Reeves versus Sanderson is the Supreme Court case. But as Your Honor is aware, the court and the finder of fact does not have to accept as true the testimony of interested witnesses. Only unrebutted testimony has to be taken as true at summary judgment of disinterested witnesses. Ms. Steinberg was not a disinterested witness. She had her reputation to protect that she wasn't just a rubber stamp, even though her conclusion was a rubber stamp of what the investigator claimed. Your Honor, I only have 10 minutes. I want to reserve. You may have a minute for rebuttal when the time comes. Thank you, Your Honor. Excuse me. Good morning. May it please the court. I'm splitting my argument with Mr. Leonard, who's here on behalf of the county. I'm here on behalf of Detective Trombi. And I'm going to try six minutes and 30 seconds. Excuse me, I take it you are Mr. Dichter? I am, sir. Thank you. Yes, I am. So the first question in a sense I have is that what counsel has argued is a claim that he never actually made. I mean, he's essentially arguing that there was a deliberate fabrication of the evidence. And therefore, his 1983 action, which he didn't even get to, a 1983 action requiring the denial, the intent to deny, by the officer to the plaintiffs in the case, former criminal defendants, a specific constitutional right. And that's why his claim ultimately failed. After four or five or six or 26 attempts of Judge Waite to pull out of him, what constitutional right did she violate? He was unable to come up with anything other than, well, the conditions of release. And the conditions of release don't get there. Now, if the court... Well, the conditions of release included not leaving the state, but in fact, as I understand it, any time they wanted to, they could go where they wanted. Well, yeah, it included that. The Karam case really disposes of this argument, even though Karam says, well, we're looking at a misdemeanor here. And on a felony, we'll look at it on a case-by-case basis. But the conditions of release here were the same as in Karam. An OR release, with you can't leave the state without permission, every time the criminal defendants, plaintiffs in the case, asked, which was twice they got permission to leave. There were no other conditions of release, period. They didn't have to go to pretrial services. They didn't have to wear an ankle monitor, an ankle bracelet. They didn't have to So every case cited by counsel with respect to release conditions being an imposition on liberty, following Justice Ginsburg's concurring opinion in Albright, every case he cited fails because in Karam, the conditions of release for the misdemeanor were the same as they were for the felony here. And what Justice Ginsburg and the court in Karam both assumed would be that, well, for a felony, the conditions would be tougher. But they weren't. And so you have the Eastern District of California case following Karam, which we cited, which applied the same rule to the felony in that case. So there is no specific constitutional violation that could be presented by plaintiffs that entitled them to go forward on their 1983 case. That's why at the very end, after a year or so, after a strict order saying, we're going to give you one more amendment, but never another amendment, plaintiffs still moved to try to amend, to add a Devereaux claim. Obviously, in Devereaux, there doesn't need to be a specific constitutional violation because Devereaux itself, as Judge Graber, you wrote in Spencer, is enough standing alone. If there's a deliberate fabrication in that case, it was a lengthy history of the creation out of thin air, as you wrote, of confessions, of identifications that never even existed. I take issue with counsel on his contention that there was any erroneous information imparted to anybody. This issue about the air conditioning has been the big lie in this case from the inception of the defense's ability, prior to this lawyer, of convincing the county attorney, now on our Supreme Court, that he should just get rid of the case. It was simply by misrepresenting what the records actually showed. More than that, more than that is that counsel himself, in his reply brief, page 4, note 2, essentially abandons his position. He says, specifically, the county contends the AC unit failed to cool the kennel because the night of June 20th was unusually cool and the thermostat failed to reach the temperature necessary to turn the compressor on. He says, Trombi admitted the flakes were not responsible for the air conditioning system in the home. Accordingly, whether the air conditioning unit actually malfunctioned, or simply did not cycle on, the flakes were not at fault. In other words, the air conditioning unit worked all night. If it didn't work all night, he's abandoned his reliance on the defense that it did, and he's shifted instead to, I didn't know, which is an affirmative defense to a general intent crime, which this is. This is a knowingly, not a willfully statute, as charged in this case. He abandoned the position in favor of, my clients didn't know. Under Arizona law, that does not negate probable cause. To cite an example we're familiar with in our courts, a car is stopped on I-19 coming up from Nogales, there's 2,000 pounds of marijuana in the trunk, and the driver says, my goodness, I sure didn't know it was there. Under his theory, there's no probable cause, but that's ridiculous. An absence of knowledge means a mistake of fact. I didn't know putting 1,100 pounds of dog in a 9 by 12 room, which is an area about the size of one of these tables, or two of them, 28 dogs, 1,100 pounds. The air conditioning had nothing to do with these dogs dying at all. Counsel, did you wish to allow some time for your? I am done. Counsel, can you stop the clock while he's walking up? Thank you. May it please the court, Jeff Leonard on behalf of Maricopa County. A couple of quick points. One, I do want to correct a misstatement that is made in the appellant's reply brief that we obviously did not have an opportunity to respond to. That is contained on page 11 of the reply brief where the statement is made that Detective Trombi and the county filed two summary judgment motions and didn't address the issue of absolute immunity of that issue. That is simply not correct. First of all, and aside, Detective Trombi and the county filed one motion for summary judgment. The second one was sua sponte by the trial court. Second, if the court will refer to the defendant's motion for summary judgment, which is the Trombi supplemental excerpt of record at page 133, the issue of grand jury immunity is explicitly raised, in fact, citing the U.S. Supreme Court case Rayburg v. Polk. So I wanted to correct that. Second, the issue of county liability. Both in the trial court and in this court, the county has argued that because Detective Trombi, as is clear, from three amended complaints, was named only in her individual capacity, that under the ruling of Kentucky v. Graham, the U.S. Supreme Court case, and a number of Ninth Circuit cases, including the Diocampo case that we have cited in our she is sued only in her individual capacity means that relief can be awarded only against her and not against Maricopa County. That issue has been raised both in the trial court and here, and in neither has been addressed. It is totally absent in appellant's briefs in this court. Counsel, would you have a chance to reply to opposing counsel's reference to SCR 233 in response to my concern about the fact that the prosecutor, in effect, provides an independent basis. The prosecutor acting individually, having read all of the material, is there anything in there that would indicate that he brought the prosecution specifically because of Trombi's statements? No, Your Honor. I cannot, Your Honor, refer specifically to SCR 233 because I don't have it in front of me and I don't know what it is. But what I can tell this court, Your Honor, is that this is not an issue. The evidence is overwhelming. This is not an issue where we have a prosecutor who says, oh, I wasn't Oh, sure, a prosecutor is going to say that. She was provided with the entire 2,000-plus-page investigative report, testified that she reviewed the entire report. She not only reviewed the probable cause statement, she reviewed the entire George Hogue report. He was the electrical engineer who examined the Your Honor. I think we get the point. Thank you, Your Honor. Thank you, counsel. Mr. Montoya, you have a minute for rebuttal. Thank you, Your Honor. First of all, I'm looking at document number 273. It's the final pretrial order in this case signed by Mr. Dichter, signed by Mr. Leonard. This is in reference to absolute immunity, defendant's defenses. They have two, independent prosecutorial judgment and qualified immunity, not absolute immunity. Second page, defendant's defenses, independent prosecutorial judgment and qualified immunity. If it's not in the final pretrial, Your Honor, in our opinion, it's waived. Second of all, the reason why the court granted summary judgment against the plaintiffs in the proceedings below is because the district court concluded that we couldn't find a constitutional right that had been violated. But we had. It's the right not to be prosecuted based upon false evidence. And that was announced in this court. Really, the court indicated that it was a long-time right in Devereaux versus in the Devereaux case. And also announced then it's also announced in Blankenhorn versus City of Orange. Devereaux is at 263 Fed 3rd, 1070. And then the Blankenhorn versus City of Orange case is at 485 Fed 3rd, 463. But even then, you still have to have the burden of showing that this was an intentional misrepresentation rather than a mistake. Well, and the district court found that the finder of fact could conclude that it was intentional. One last point in reference to the prosecutor. Her testimony, the court is not supposed to weigh credibility at summary judgment. Her testimony that she exercised prosecutorial independent judgment could be disbelieved. And there was a reason to disbelieve it. If someone gives you a stack of over 2,000 papers and you're inundated with work and you've got a prosecutor who's done it. There's no evidence of that. Well, but there is. The only evidence was that she reviewed it all carefully. And there's no contrary evidence on that point, is there? Well, Your Honor, but she wasn't disinterested. And she did, in fact, reach the same identical, profoundly factually erroneous conclusion as the investigator, Ms. Trombi. Thank you, counsel. Thank you, Your Honor. The case just argued is submitted, and we appreciate the arguments of all three counsel. We will take about a 10-minute break before the final case.
judges: O'scannlain, Graber, Miller